EBAY INC. ET AL. *v.* MERCEXCHANGE, L. L. C.

No. 05–130.   Argued March 29, 2006—Decided May 15, 2006

*Carter G. Phillips* argued the cause for petitioners.   With him on the briefs were *Richard D. Bernstein, Virginia A. Seitz,* and *Allan M. Soobert.*

*Jeffrey P. Minear* argued the cause for the United States as *amicus curiae* in support of respondent. With him on the brief were *Solicitor General Clement, Assistant Attorney General Barnett, Acting Assistant Attorney General Katsas, Deputy Solicitor General Hungar, Anthony J. Steinmeyer, David Seidman, Mark R. Freeman, John M. Whealan, Cynthia C. Lynch,* and *Heather F. Auyang.*

*Seth P. Waxman* argued the cause for respondent. With him on the brief were *Paul R. Q. Wolfson, Scott L. Robertson, Gregory N. Stillman, Jennifer A. Albert, David M. Young,* and *Brian M. Buroker.**

---

*Briefs of *amici curiae* urging reversal were filed for the American Innovators' Alliance by *Theodore B. Olson* and *Matthew D. McGill;* for the Association of the Bar of the City of New York by *James W. Dabney* and *Peter A. Sullivan;* for the Business Software Alliance et al. by *Kenneth S. Geller* and *Andrew J. Pincus;* for the Computer & Communications Industry Association by *Jonathan Band;* for the Electronic Frontier Foundation et al. by *Jason Schultz;* for Nokia Corp. by *Michael P. Kenny;* for Research in Motion, Ltd., by *Martin R. Glick, Sarah M. King, Herbert L. Fenster, Lawrence S. Ebner, Henry C. Bunsow, David W. Long,* and *Mark L. Whitaker;* for the Securities Industry Association et al. by *W. Hardy Callcott* and *Richard Whiting;* for Time Warner Inc. et al. by *Kathleen M. Sullivan, Daniel H. Bromberg,* and *Margret M. Caruso;* for Yahoo! Inc. by *Christopher J. Wright, Timothy J. Simeone,* and *Lisa G. McFall;* and for Malla Pollack et al. by *Ms. Pollack, pro se.*

Briefs of *amici curiae* urging affirmance were filed for the American Bar Association by *Michael S. Greco, Robert F. Altherr, Jr., Nina L. Medlock,* and *Joseph M. Potenza;* for the Biotechnology Industry Organization by *Nancy J. Linck* and *Brian P. Barrett;* for the General Electric Co. et al. by *John C. Englander, J. Anthony Downs, Kevin P. Martin,* and *William F. Sheehan;* for Law Professors by *Thomas G. Field, Jr., Craig S. Jepson,* and *Karl F. Jorda,* all *pro se;* for the Pharmaceutical Research and Manufacturers of America by *Harry J. Roper, Aaron A. Barlow, Paul M. Smith,* and *Katherine A. Fallow;* for Qualcomm Inc. et al. by *Kenneth C. Bass III, Robert G. Sterne, Edward J. Kessler,* and *Linda E. Horner;* for Rembrandt IP Management, LLC, by *Lawrence S. Robbins* and *Roy T. Englert, Jr.;* for Technology, Patents & Licensing, Inc., et al. by *Keara A. Bergin;* for the United Inventors Association et al. by *Robert M. Asher* and *Erik Paul Belt;* for Various Law & Economics Professors by *F. Scott Kieff* and *Richard A. Epstein,* both *pro se;* for the Wisconsin Alumni Re-

JUSTICE THOMAS delivered the opinion of the Court.

Ordinarily, a federal court considering whether to award permanent injunctive relief to a prevailing plaintiff applies the four-factor test historically employed by courts of equity. Petitioners eBay Inc. and Half.com, Inc., argue that this traditional test applies to disputes arising under the Patent Act. We agree and, accordingly, vacate the judgment of the Court of Appeals.

## I

Petitioner eBay operates a popular Internet Web site that allows private sellers to list goods they wish to sell, either through an auction or at a fixed price. Petitioner Half.com, now a wholly owned subsidiary of eBay, operates a similar Web site. Respondent MercExchange, L. L. C., holds a number of patents, including a business method patent for an electronic market designed to facilitate the sale of goods between private individuals by establishing a central authority to promote trust among participants. See U. S. Patent No. 5,845,265. MercExchange sought to license its patent to eBay and Half.com, as it had previously done with other companies, but the parties failed to reach an agreement. MercExchange subsequently filed a patent infringement suit against eBay and Half.com in the United States District Court for the Eastern District of Virginia. A jury found

search Foundation et al. by *Gary M. Hoffman* and *Woody N. Peterson;* for Martin Cooper et al. by *Justin A. Nelson, Parker C. Folse III, Stephen D. Susman, Mark L. D. Wawro,* and *Max L. Tribble, Jr.;* and for Steven M. Hoffberg by *Robert J. Rando* and *Mr. Hoffberg, pro se.*

Briefs of *amici curiae* were filed for the American Intellectual Property Law Association et al. by *Joseph S. Cianfrani, Melvin C. Garner,* and *Martha B. Schneider;* for the Association of American Universities et al. by *Morgan Chu* and *Laura W. Brill;* for International Business Machines Corp. by *Christopher A. Hughes* and *Mark J. Abate;* for the Patent, Trademark & Copyright Section of the Bar Association of the District of Columbia by *Blair E. Taylor* and *Susan M. Dadio;* for Teva Pharmaceuticals USA, Inc., by *James Galbraith* and *Elizabeth J. Holland;* and for 52 Intellectual Property Professors by *Mark A. Lemley, pro se.*

that MercExchange's patent was valid, that eBay and Half.com had infringed that patent, and that an award of damages was appropriate.[1]

Following the jury verdict, the District Court denied MercExchange's motion for permanent injunctive relief. 275 F. Supp. 2d 695 (2003). The Court of Appeals for the Federal Circuit reversed, applying its "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances." 401 F. 3d 1323, 1339 (2005). We granted certiorari to determine the appropriateness of this general rule. 546 U. S. 1029 (2005).

## II

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. See, e. g., *Weinberger* v. *Romero-Barcelo*, 456 U. S. 305, 311–313 (1982); *Amoco Production Co.* v. *Gambell*, 480 U. S. 531, 542 (1987). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. See, e. g., *Romero-Barcelo*, 456 U. S., at 320.

These familiar principles apply with equal force to disputes arising under the Patent Act. As this Court has long recognized, "a major departure from the long tradition of equity practice should not be lightly implied." *Ibid.;* see also *Amoco, supra,* at 542. Nothing in the Patent Act indi-

---

[1] EBay and Half.com continue to challenge the validity of MercExchange's patent in proceedings pending before the United States Patent and Trademark Office.

cates that Congress intended such a departure. To the contrary, the Patent Act expressly provides that injunctions "may" issue "in accordance with the principles of equity." 35 U. S. C. § 283.[2]

To be sure, the Patent Act also declares that "patents shall have the attributes of personal property," § 261, including "the right to exclude others from making, using, offering for sale, or selling the invention," § 154(a)(1). According to the Court of Appeals, this statutory right to exclude alone justifies its general rule in favor of permanent injunctive relief. 401 F. 3d, at 1338. But the creation of a right is distinct from the provision of remedies for violations of that right. Indeed, the Patent Act itself indicates that patents shall have the attributes of personal property "[s]ubject to the provisions of this title," 35 U. S. C. § 261, including, presumably, the provision that injunctive relief "may" issue only "in accordance with the principles of equity," § 283.

This approach is consistent with our treatment of injunctions under the Copyright Act. Like a patent owner, a copyright holder possesses "the right to exclude others from using his property." *Fox Film Corp.* v. *Doyal,* 286 U. S. 123, 127 (1932); see also *id.,* at 127–128 ("A copyright, like a patent, is at once the equivalent given by the public for benefits bestowed by the genius and meditations and skill of individuals and the incentive to further efforts for the same important objects" (internal quotation marks omitted)). Like the Patent Act, the Copyright Act provides that courts "may" grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U. S. C. § 502(a). And as in our decision today, this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction auto-

---

[2] Section 283 provides that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

matically follows a determination that a copyright has been infringed. See, *e. g., New York Times Co.* v. *Tasini,* 533 U. S. 483, 505 (2001) (citing *Campbell* v. *Acuff-Rose Music, Inc.,* 510 U. S. 569, 578, n. 10 (1994)); *Dun* v. *Lumbermen's Credit Assn.,* 209 U. S. 20, 23–24 (1908).

Neither the District Court nor the Court of Appeals below fairly applied these traditional equitable principles in deciding respondent's motion for a permanent injunction. Although the District Court recited the traditional four-factor test, 275 F. Supp. 2d, at 711, it appeared to adopt certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases. Most notably, it concluded that a "plaintiff's willingness to license its patents" and "its lack of commercial activity in practicing the patents" would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue. *Id.,* at 712. But traditional equitable principles do not permit such broad classifications. For example, some patent holders, such as university researchers or self-made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their works to market themselves. Such patent holders may be able to satisfy the traditional four-factor test, and we see no basis for categorically denying them the opportunity to do so. To the extent that the District Court adopted such a categorical rule, then, its analysis cannot be squared with the principles of equity adopted by Congress. The court's categorical rule is also in tension with *Continental Paper Bag Co.* v. *Eastern Paper Bag Co.,* 210 U. S. 405, 422–430 (1908), which rejected the contention that a court of equity has no jurisdiction to grant injunctive relief to a patent holder who has unreasonably declined to use the patent.

In reversing the District Court, the Court of Appeals departed in the opposite direction from the four-factor test. The court articulated a "general rule," unique to patent disputes, "that a permanent injunction will issue once infringe-

ment and validity have been adjudged." 401 F. 3d, at 1338. The court further indicated that injunctions should be denied only in the "unusual" case, under "exceptional circumstances" and "'in rare instances . . . to protect the public interest.'" *Id.,* at 1338–1339. Just as the District Court erred in its categorical denial of injunctive relief, the Court of Appeals erred in its categorical grant of such relief. Cf. *Roche Products, Inc.* v. *Bolar Pharmaceutical Co.,* 733 F. 2d 858, 865 (CA Fed. 1984) (recognizing the "considerable discretion" district courts have "in determining whether the facts of a situation require it to issue an injunction").

Because we conclude that neither court below correctly applied the traditional four-factor framework that governs the award of injunctive relief, we vacate the judgment of the Court of Appeals, so that the District Court may apply that framework in the first instance. In doing so, we take no position on whether permanent injunctive relief should or should not issue in this particular case, or indeed in any number of other disputes arising under the Patent Act. We hold only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.

Accordingly, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA and JUSTICE GINSBURG join, concurring.

I agree with the Court's holding that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases

governed by such standards," *ante,* at 394, and I join the opinion of the Court. That opinion rightly rests on the proposition that "a major departure from the long tradition of equity practice should not be lightly implied." *Weinberger* v. *Romero-Barcelo,* 456 U. S. 305, 320 (1982); see *ante,* at 391.

From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases. This "long tradition of equity practice" is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes—a difficulty that often implicates the first two factors of the traditional four-factor test. This historical practice, as the Court holds, does not *entitle* a patentee to a permanent injunction or justify a *general rule* that such injunctions should issue. The Federal Circuit itself so recognized in *Roche Products, Inc.* v. *Bolar Pharmaceutical Co.,* 733 F. 2d 858, 865–867 (1984). At the same time, there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate. "Discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin* v. *Franklin Capital Corp.,* 546 U. S. 132, 139 (2005). When it comes to discerning and applying those standards, in this area as others, "a page of history is worth a volume of logic." *New York Trust Co.* v. *Eisner,* 256 U. S. 345, 349 (1921) (opinion for the Court by Holmes, J.).

JUSTICE KENNEDY, with whom JUSTICE STEVENS, JUSTICE SOUTER, and JUSTICE BREYER join, concurring.

The Court is correct, in my view, to hold that courts should apply the well-established, four-factor test—without resort to categorical rules—in deciding whether to grant injunctive relief in patent cases. THE CHIEF JUSTICE is also correct

that history may be instructive in applying this test. *Ante,* at 395 (concurring opinion). The traditional practice of issuing injunctions against patent infringers, however, does not seem to rest on "the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes." *Ibid.* (ROBERTS, C. J., concurring). Both the terms of the Patent Act and the traditional view of injunctive relief accept that the existence of a right to exclude does not dictate the remedy for a violation of that right. *Ante,* at 391–392 (opinion of the Court). To the extent earlier cases establish a pattern of granting an injunction against patent infringers almost as a matter of course, this pattern simply illustrates the result of the four-factor test in the contexts then prevalent. The lesson of the historical practice, therefore, is most helpful and instructive when the circumstances of a case bear substantial parallels to litigation the courts have confronted before.

In cases now arising trial courts should bear in mind that in many instances the nature of the patent being enforced and the economic function of the patent holder present considerations quite unlike earlier cases. An industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees. See FTC, To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy, ch. 3, pp. 38–39 (Oct. 2003), available at http://www.ftc.gov/os/2003/10/innovationrpt.pdf (as visited May 11, 2006, and available in Clerk of Court's case file). For these firms, an injunction, and the potentially serious sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent. See *ibid.* When the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement

and an injunction may not serve the public interest. In addition injunctive relief may have different consequences for the burgeoning number of patents over business methods, which were not of much economic and legal significance in earlier times. The potential vagueness and suspect validity of some of these patents may affect the calculus under the four-factor test.

The equitable discretion over injunctions, granted by the Patent Act, is well suited to allow courts to adapt to the rapid technological and legal developments in the patent system. For these reasons it should be recognized that district courts must determine whether past practice fits the circumstances of the cases before them. With these observations, I join the opinion of the Court.